IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HAPAG-LLOYD (AMERICA), LLC,                )
as agent for HAPAG-LLOYD                    )
AKTIENGESELLSCHAFT, HAMBURG,                )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )     C.A. No. 23-1016-JLH-EGT
                                            )
INDORAMA VENTURES ALPHAPET                  )
HOLDINGS, INC.,                             )
                                            )
                Defendant.                  )

<u>**REPORT AND RECOMMENDATION**</u>

Presently before the Court is the motion of Defendant Indorama Ventures Alphapet Holdings, Inc. ("Defendant" or "Indorama") to dismiss all counts of the Amended Complaint. (D.I. 20). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED.

**I.      <u>BACKGROUND</u>**

This is an admiralty case. Plaintiff Hapag-Lloyd (America), LLC ("Plaintiff" or "Hapag"), as agent for Hapag-Lloyd Aktiengesellschaft, Hamburg, is a common carrier by water. (D.I. 18 ¶ 3). According to the Amended Complaint, Hapag transported cargo "at the behest of and for the benefit of" Indorama between 2020 and 2023. (*Id*. ¶ 4). Hapag alleges that, during those shipments, it incurred ocean freight, demurrage and/or detention charges amounting to $605,987.26, a sum which Indorama has refused to pay. (*Id*. ¶¶ 11-15 & 17). Bills of lading governing those maritime shipments underlie the parties' dispute here. (*See* D.I. 18, Ex. A).

The bills of lading associated with the various shipments at issue ("the Hapag Bills of Lading") identify third-party Dhunseri Polyester Company ("Dhunseri") as "Shipper," Hapag as

"Carrier" and Indorama as "Consignee." (*See generally* D.I. 18, Ex. A).[1] Generally speaking, Hapag claims that Indorama was a party to the Hapag Bills of Lading and therefore should be required to pay the amount due; Indorama claims that it is not bound by the Hapag Bills of Lading and that Hapag should instead seek payment from the third-party shipper, Dhunseri.[2]

On September 18, 2023, Hapag filed the original Complaint against Indorama, asserting claims for money due under tariff and service contracts, breach of contract, unjust enrichment, quantum meruit, account stated and attorney fees. (D.I. 1). In response to Indorama's first motion to dismiss (D.I. 9, 10, 14 & 15), Judge Hall dismissed the original Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 17). On February 21, 2025, Hapag filed the Amended Complaint, which added new factual allegations and exhibits relating to Indorama and the Hapag Bills of Lading; Hapag also withdrew its claim for money due under tariff and service contracts and maintained its other contract and quasi-contract claims. (D.I. 18).

On March 27, 2025, Indorama filed the present motion to dismiss under Rule 12(b)(6), arguing that the claims for breach of maritime contracts (Count I), unjust enrichment (Count II), quantum meruit (Count III), account stated (Count IV) and attorney fees (Count V) in the Amended Complaint should be dismissed in their entirety as inadequately pled. (D.I. 20 & 21). Briefing was complete on May 16, 2025. (D.I. 23 & 24).

---

[1]    The Amended Complaint states that "almost all" and "most" of the Hapag Bills of Lading identify Dhunseri as shipper and Indorama as consignee, seemingly implying that some do not. (*See* D.I. 18 ¶¶ 6 & 7; *see also* D.I. 23 at 11 (same)). All bills of lading attached to the Amended Complaint, however, appear to identify Dhunseri as shipper and Indorama as consignee. (*See generally* D.I. 18, Ex. A). For the purposes of this Report and Recommendation, all Hapag Bills of Lading are assumed to identify Dhunseri as "Shipper," Hapag as "Carrier" and Indorama as "Consignee."

[2]    A common theme throughout Indorama's briefing is that Hapag should seek reimbursement from Dhunseri – not Indorama. (D.I. 21 at 12-15; D.I. 24 at 10). Although the Court does not disagree that this seems like a reasonable path for Hapag to pursue, the Court must nevertheless address the claims that Hapag has directed to Indorama.

## II.    <u>LEGAL STANDARD</u>

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## III.    <u>DISCUSSION</u>

Indorama seeks to dismiss Hapag's claims of breach of maritime contracts (Count I), unjust enrichment (Count II), quantum meruit (Count III), account stated (Count IV) and attorneys' fees (Count V). The Court addresses each claim in turn.

### A.    Count I – Breach of Maritime Contract

To state a claim for breach of maritime contract, a plaintiff must plausibly allege (1) the existence of a contract between the plaintiff and defendant, (2) performance of the plaintiff's obligations under the contract, (3) breach of the contract by the defendant and (4) damages to the plaintiff caused by the defendant's breach.  *See Maersk Line v. TJM Int'l Ltd. Liab. Co.*, 427 F. Supp. 3d 528, 534 (D.N.J. 2019) (quoting *OOCL (USA) Inc. v. Transco Shipping Corp.*, No. 13-cv-5418 (RJS), 2015 WL 9460565, at \*4 (S.D.N.Y. Dec. 23, 2015)).[3]  Indorama disputes that the Amended Complaint adequately pleads the first and third elements:  the existence of a contract and breach of the alleged contract by Indorama.  (*See* D.I. 21 at 6-11; D.I. 24 at 2-7).  Hapag maintains that the Hapag Bills of Lading are contracts that Indorama breached.  (D.I. 23 at 8-17).

Generally, a bill of lading records that a carrier has received the to-be shipped goods from the shipping party, states the terms of carriage and serves as evidence of the contract for carriage.  *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18-19 (2004).  Relevant here, a bill of lading identifies three pertinent entities:  the shipper/consignor (company arranging shipment), the consignee (company owed delivery) and the carrier (company carrying the goods).  *See Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 277 (6th Cir. 2021).  Bills of lading are transportation contracts between the shipper/consignor and carrier.  *See Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003) (citing *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1050 (3d Cir. 1993)).  Consignees, however, are considered third-party beneficiaries to bills of lading.  *See Ingram*, 3 F.4th at 279 (citing *Dynamic Worldwide Logistics, Inc. v. Exclusive*

---

[3]    Because both parties cite *Maersk Line* as articulating the pertinent standard for breach of maritime contract (D.I. 21 at 6; D.I. 23 at 9), the Court proceeds under that standard.  Even if the Court were to apply Delaware law, however, the outcome would be the same because Delaware law requires the same elements contested by Indorama.  *See GEICO Gen. Ins. Co. v. Green*, 276 A.3d 462 (Del. 2022).

*Expressions, LLC*, 77 F. Supp. 3d 364, 374 (S.D.N.Y. 2015)).  Applying this framework to the facts here, the Hapag Bills of Lading are transportation contracts between third-party Dhunseri (shipper) and Hapag (carrier), with Indorama (consignee) as the third-party beneficiary.  (*See* D.I. 18, Ex. A).  Hapag insists that Indorama is bound by the bills of lading.  (*See* D.I. 23 at 8-17).

As an initial matter, the Court is unpersuaded by Hapag's argument that Indorama's acceptance of the shipped goods necessarily binds Indorama to the terms of the bills of lading.  (D.I. 23 at 14-17).  It is still an open question under maritime law as to whether mere acceptance of the goods by the consignee is enough to render it a party bound by the terms of the subject bill of lading.[4]  Although the Third Circuit has yet to address the issue, the Court finds persuasive the Ninth Circuit's recent decision in *Milos Product Tanker Corp. v. Valero Marketing & Supply Co.*, which found that acceptance alone is sufficient to bind a consignee in the maritime context only if both parties are common carriers.  117 F.4th 1153, 1161-62 (9th Cir. 2024); *see also id.* at 1162 ("Unlike common-carrier consignees, private-carrier consignees are not presumed to know key terms simply because they receive and accept goods. . . . Therefore, private-carrier consignees cannot be under the same presumptive obligation to pay freight upon acceptance.").  Here, Hapag fails to allege that Indorama is a common carrier.  Under the rule in *Milos*, Hapag must allege more than acceptance of the goods to establish that Indorama is bound by the Hapag Bills of Lading.

Instead, the Amended Complaint must allege sufficient facts that either (1) Indorama manifested acceptance or consent to be bound by the Hapag Bills of Lading or (2) an agency (or alter ego) relationship existed between Indorama and Dhunseri.  *See Kawasaki Kisen Kaisha, Ltd.*

---

[4]     In the railroad context, however, mere acceptance is enough.  *See Louisville & N.R. Co. v. Cent. Iron & Coal Co.*, 265 U.S. 59, 70 (1924) (in railroad case, "if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery, or not until later"); *see also CSX Transp. Co. v. Novolog Bucks Cnty.*, 502 F.3d 247, 254-55 (3d Cir. 2007).

*v. Plano Molding Co.*, 696 F.3d 647, 655 (7th Cir. 2012); *see also Dynamic Worldwide*, 77 F. Supp. 3d at 374 ("Contractual obligations cannot be imposed on an intended beneficiary absent a showing that the third party manifested acceptance to be bound or the existence of an agency relationship with one of the contracting parties."); *Zim Am. Integrated Shipping Servs. Co. v. Sportswear Grp.*, No. 20-CV-4838 (LJL), 2021 WL 5450117, at *4 (S.D.N.Y. Nov. 18, 2021) (reciting same principle); *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 71-72 (S.D.N.Y. 2009) (same).  The Court addresses each potential ground for contractual liability in turn.

### 1.    Acceptance or Consent to Be Bound

Indorama argues that the Amended Complaint contains insufficient facts to infer that Indorama consented to be bound by the Hapag Bills of Lading.  (D.I. 21 at 6-8; D.I. 24 at 2-6).  Relevant here, Indorama argues there are two ways that a consignee can consent to be bound by a bill of lading.  (*See* D.I. 21 at 7-8; D.I. 24 at 4-5).  First, a consignee can consent to the terms of a bill of lading by suing under it.  *See Zim*, 2021 WL 5450117, at *5 (collecting cases); *see also Milos*, 117 F.4th at 1159 ("[C]onsignees may show their consent to be bound under a bill of lading by suing on the bill of lading . . . .").  Second, a consignee can consent to a bill of lading by presenting the bill of lading to the carrier and accepting the goods under it.  *See Zim*, 2021 WL 5450117, at *5 (collecting cases); *Milos*, 117 F.4th at 1159 ("Typically, consignees demonstrate consent to be bound by presenting the bill of lading and accepting the goods under it.").  Here, the Amended Complaint contains no facts indicating that Indorama either filed suit under the Hapag Bills of Lading or presented the Hapag Bills of Lading to Hapag, let alone signed or endorsed them.[5] *Cf. OOCL (USA)*, 2015 WL 9460565, at *4 ("Defendant accepted the bills of lading and

---

[5]    In its answering brief, Hapag states that Indorama "was made a party to the contract upon presentment of the bill of lading and acceptance of the goods."  (D.I. 23 at 16).  Because the Amended Complaint is silent as to whether Indorama presented the Hapag Bills of Lading, Hapag is relying on facts outside the pleading.  An opposition brief cannot be used

became a party to each when it signed, endorsed, and presented them to Plaintiff.").  At most, the Amended Complaint alleges that Indorama was the ultimate recipient of goods.  (*See* D.I. 18 ¶¶ 4, 16 & 18).  Without more, however, the Court cannot plausibly infer that Indorama manifested acceptance or consent to be bound by the Hapag Bills of Lading.  *See Rickmers*, 622 F. Supp. 2d at 72-73 (status as "cargo purchaser and ultimate consignee" insufficient on its own to bind purchaser to bills of lading).  This theory of contractual liability is therefore of no avail to Hapag.

### 2.    Agency or Alter-Ego Theory

Turning to Hapag's agency theory, Indorama argues that the Amended Complaint also fails to establish that Indorama is liable based on its alleged corporate affiliation with Dhunseri or based on an agency relationship with Dhunseri.  (*See* D.I. 21 at 8-10; D.I. 24 at 3; *see also* D.I. 23 at 10-11 (Hapag's agency theory)).  The Court agrees with Indorama.

Generally, a corporation can be held liable for the actions of its corporate affiliate under two potential theories:  alter ego (or piercing the corporate veil) and agency.  *See Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1476-77 (3d Cir. 1988).  Under the alter-ego theory, "complete domination" by the parent corporation of the corporate affiliate is "decisive."  *Id*. at 1477.[6]  Under the agency theory, there are three fundamental characteristics of the relationship: (1) the agent has power to alter the legal relations between the principal and a third party, (2) the

---

to supplement the pleadings to survive a motion to dismiss under Rule 12(b)(6).  *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007).

[6]    Under the alter-ego theory, "significant factors to consider include adequacy of capitalization, overlapping directorates and officers, separate record keeping, payment of taxes and filing of consolidated returns, maintenance of separate bank accounts, level of parental financing and control over the subsidiary, and subsidiary authority over day-to-day operations."  *Phoenix Canada Oil*, 842 F.2d at 1476; *see also FinancialApps, LLC v. Envestnet, Inc.*, C.A. No. 19-1337-GBW-CJB, 2023 WL 4975373, at *2 (D. Del. July 31, 2023), *report and recommendation adopted*, C.A. No. 19-1337-JLH-CJB, 2024 WL 4297664 (D. Del. Sept. 26, 2024).

agent is a fiduciary who works on behalf of the principal and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent. *Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*, 619 F. Supp. 3d 473, 482 (D. Del. 2022) (citing Restatement (Second) of Agency §§ 12-14), *aff'd*, No. 22-2634, 2023 WL 3862506 (3d Cir. June 7, 2023).   The "touchstone" of an agency relationship is the principal's "right to control the agent." *Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 89 (3d Cir. 2025) (quoting *Gov't of Virgin Islands v. Richards*, 618 F.2d 242, 244 (3d Cir. 1980)).

Turning to the allegations in the Amended Complaint, Hapag alleges that Indorama "actually retained Hapag-Lloyd," that Indorama "never denied that it was the proper party to be billed," that Indorama is "the parent company, a joint venturer or otherwise affiliated" with Dhunseri and that Dhunseri "took shipping instructions from" Indorama.  (D.I. 18 ¶¶ 5-7).  Hapag also generically alleges that "the Shipper [Dhunseri] was acting as an agent for a known principal, Defendant, Indorama, Consignee, which is its parent or affiliated company."  (*Id.* ¶ 9 ("Since the named Shipper [Dhunseri] was acting as an agent for a known principal, Indorama, Defendant is in contractual privity with Plaintiff."); *see also id.* ¶ 19 ("Hapag-Lloyd issued the subject bills of lading to Shipper [Dhunseri] as agent for Defendant, Consignee.")).  None of these allegations, however, suffice to establish liability under an alter-ego or agency theory.

As to alter-ego, Hapag includes no factual allegations – plausible or otherwise – from which the Court may infer that Indorama exercised "total domination" over Dhunseri such that Dhunseri was "merely a shadow of the parent." *Arcelik A.S.*, 2023 WL 3862506, at *3 n.5 (quoting *Phoenix Canada Oil*, 842 F.2d at 1476-77).  At most, Hapag alleges that Indorama is corporately affiliated in some way with Dhunseri.  (*See* D.I. 18 ¶ 6; D.I. 18, Ex. E).  But that is not enough for alter-ego liability.  Hapag must plausibly allege facts relevant to domination, such as officers and

directors, financing, responsibility for day-to-day operations, arrangements for payment of salaries and expenses or the origin of subsidiary's business and asserts. *See FinancialApps*, 2023 WL 4975373, at *2; *see also Phoenix Canada Oil*, 842 F.2d at 1476. Having not done so here, Hapag cannot pursue an alter-ego theory of liability for Indorama.

Hapag's agency theory similarly fails. As discussed above, the Amended Complaint includes allegations that Indorama retained Hapag, was somehow affiliated with and provided shipping instructions to Dhunseri and never denied that it was the proper party to be billed. (D.I. 18 ¶¶ 5-7). The Amended Complaint also includes a conclusory assertion that that Dhunseri was acting as Indorama's agent. (*Id.* ¶¶ 9 & 19). But Hapag fails to adequately plead that Dhunseri held a power to alter the legal relations between Indorama and Hapag, that Dhunseri was a fiduciary with respect to the agency relationship or that Indorama had a right to control Dhunseri's conduct with respect to matters entrusted to Dhunseri. Critically, the Amended Complaint fails to plausibly allege that Indorama exercised the requisite level of control over Dhunseri's conduct to support a finding of agency. *See Migliore*, 160 F.4th at 89-90. Hapag's agency theory of liability is simply not supported by its allegations.

*    *    *

Because Hapag has failed to plausibly allege that Indorama consented to be bound by the Hapag Bills of Lading, and because any purported theory of liability based on alter ego or agency is likewise not supported by the allegations in the Amended Complaint, the Court concludes that Hapag has failed to adequately plead that a contract existed between Indorama and Hapag. The Court thus recommends that Hapag's breach of contract claim (Count I) be dismissed.[7]

---

[7]    Because Hapag has failed to adequately plead that a contract existed between Indorama and Hapag, the Court does not reach the issue of breach of contract by Indorama.

### B.        Counts II, III & IV – Quasi-Contract Claims

The Amended Complaint includes three quasi-contract claims:  unjust enrichment (Count II), quantum meruit (Count III) and account stated (Count IV).[8]  (*See* D.I. 18 ¶¶ 15-20).  Indorama argues that all three quasi-contract claims should be dismissed because Hapag alleges that an express contract controls the parties' relationship.  (*See* D.I. 21 at 11-12 & 14-15; D.I. 24 at 7-8).  Hapag responds that it is permitted to plead alternative theories of recovery under Federal Rule of Civil Procedure 8(a)(3).  (*See* D.I. 23 at 18-21).  Procedurally, the Court agrees with Hapag.

Although Indorama relies on several Delaware cases to support its argument that pleading the existence of an express contract precludes assertion of the quasi-contract claims (D.I. 24 at 7-8), those cases are all distinguishable in that the existence of an enforceable contract between the parties and governing the dispute was not contested.  *See Ameristar Casinos, Inc. v. Resorts Int'l Holdings, LLC*, No. 3685-VCS, 2010 WL 1875631, at *13 (Del. Ch. May 11, 2010) (dismissing unjust enrichment and quantum meruit claims because "there is an enforceable contract governing the subject of the parties' dispute"); *Outbox Sys., Inc. v. Trimble Inc.*, No. N21C-11-123, 2022 WL 3696773, at *9 (Del. Super. Ct. Aug. 24, 2022) (dismissing account stated claim where Defendant did not move to dismiss breach of contract claim and nothing in pleadings "suggests any doubt as to the validity or enforceability of the express contract that controls"); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891-92 (Del. Ch. 2009) (dismissing unjust enrichment claim where it was "clear from the face of the complaint that plaintiff's relationship with the defendants is governed by an express contract"); *see also Esprit Health, LLC v. Univ. of*

---

[8]        In dismissing the original Complaint, Judge Hall declined to address Hapag's non-contract claims because Hapag expressly stated that breach of contract was "all" that was before the Court.  (D.I. 17 ¶ 5 n.2 (quoting D.I. 14 at 14).  In amending its Complaint, Hapag maintained its previous non-contract claims and added allegations to those claims.  (D.I. 18, Ex. G at 5-7).

*Delaware*, C.A. No. 13-1385-RGA, 2013 WL 6773571, at *4 (D. Del. Dec. 19, 2013) (distinguishing *Kuroda* on same basis). That is not true here; Indorama vehemently disputes that an express contract ever existed between it and Hapag.

Because the parties dispute whether a contract governs their relationship (*supra* § III.A), Hapag's breach of contract claim does not foreclose it from seeking alternative, quasi-contract claims for relief.[9] *See MIG Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 513 (D. Del. 2012) (denying motion to dismiss alternative unjust enrichment claim where "there is at least some dispute concerning this contract"); *see also Gaucho Grp. Holdings, Inc. v. 3I LP*, C.A. No. 24-212-MN, 2024 WL 4679236, at *7 (D. Del. Nov. 5, 2024) ("The Court also finds that this claim is not duplicative of Defendants' breach of contract claim in Count I, because, as here, where the validity of the contract is in dispute, a party may bring an unjust enrichment claim in the alternative."); *Esprit Health*, 2013 WL 6773571, at *2 & *4 (denying motion to dismiss alternative unjust enrichment claim where "it is not an undisputed fact that there was a contract" and holding "this is not the right time to force Plaintiff to choose amongst its theories"). The Court thus turns to whether Hapag has adequately pled any of the three quasi-contract theories.[10]

---

[9]    Unlike its unjust enrichment and quantum meruit claims, Hapag's account stated claim is not explicitly pled in the alternative. (*Compare* D.I. 18 ¶¶ 15 & 17, *with id.* ¶¶ 19 & 20). Regardless of whether such alternative pleading must be explicit, the Court ultimately finds the account stated claim is inadequately pled. *See REI Holdings, LLC v. LienClear - 0001, LLC*, C.A. No. 18-1401-MN, 2019 WL 3546881, at *10 (D. Del. Aug. 5, 2019) (dismissing unjust enrichment claim because not explicitly pled in the alternative to breach of contract).

[10]    Because the parties have provided no reason to apply any other law, the Court applies Delaware law here. *See Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009) ("[M]aritime contracts are governed by federal admiralty law when there is an established federal rule, but absent such a rule, state law applies." (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313-14, 321 (1955)).

1.    Count II – Unjust Enrichment

Hapag asserts that Indorama has been unjustly enriched by the maritime shipments at issue. (D.I. 18 ¶¶ 15 & 16). "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).    To prevail on an unjust enrichment claim, a plaintiff must show (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law.    *See Nemec*, 991 A.2d at 1130.    Indorama argues that Hapag fails to state a claim for unjust enrichment.    (D.I. 21 at 12-13; D.I. 24 at 9).    The Court agrees.

Although Hapag includes some allegations regarding an enrichment to Indorama (beneficiary of Hapag's shipment) and an impoverishment to Hapag (owed over $600,000 in shipping expenses), the Amended Complaint fails to plausibly connect the two.    (*See* D.I. 18 ¶¶ 15 & 16).    Under Delaware law, there must be a "direct relationship" between the defendant's enrichment and plaintiff's impoverishment.    *See MetCap Secs. LLC v. Pearl Senior Care, Inc.*, No. CIV.A. 2129-VCN, 2007 WL 1498989, at *6 (Del. Ch. May 16, 2007); *see also Coretel Am., Inc. v. Oak Point Partners, LLC*, No. CVN21C10103AMLCCLD, 2022 WL 2903104, at *11 (Del. Super. Ct. July 21, 2022).    Hapag does not adequately plead how its impoverishment is directly related to Indorama's enrichment – Hapag barely even states the two are connected.    Moreover, if the services were performed at the "behest of someone other than the defendants," then the "plaintiff must look to that person for recovery."    *MetCap*, 2007 WL 1498989, at *6 (quoting *Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998)).    Hapag's claims appear to be based upon a contract between itself and Dhunseri, which seemingly bars Hapag's ability to recover from Indorama under a theory of unjust

enrichment here.  *See MetCap*, 2007 WL 1498989, at *6 n.49 ("[T]he inability of a party to a contract to fulfill an obligation thereunder cannot serve as a basis to conclude that other entities, who are not party to the contract, are liable for that obligation.").

The Court recognizes that Delaware law allows for claims of unjust enrichment to proceed against non-parties to contracts "who knowingly facilitate and benefit from the breach of a party to the contract." *Coretel*, 2022 WL 2903104, at *11.  But there are no allegations here to allow the Court to plausibly infer that Indorama knowingly facilitated and benefitted from Dhunseri's non-payment of Hapag's shipping costs.  *See Richey v. Showtime Networks Inc.*, C.A. No. 1:24-CV-00134-SB, 2025 WL 843278, at *4 (D. Del. Mar. 18, 2025) ("But the question is not what [defendant] knew when it released the series, it is whether it knowingly facilitated *Georgette's* breach. [Plaintiff] has not plausibly alleged that it did." (emphasis in original)).  The Court thus recommends that Hapag's claim of unjust enrichment (Count II) be dismissed.

### 2.    Count III – Quantum Meruit

In connection with the same maritime shipments, Hapag also asserts a claim of quantum meruit against Indorama.  (D.I. 18 ¶¶ 17 & 18).  Quantum meruit allows a party to recover the reasonable value of its services if the party performed the services with the expectation that the recipient would pay for them and the recipient should have known that the performing party expected to be paid.  *Petrosky v. Peterson*, 859 A.2d 77, 79 (Del. 2004).  Under Delaware law, third-party beneficiaries of contracts cannot be held liable under quantum meruit absent a showing that the plaintiff is unable to recover under the underlying contract.  *See Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 854-56 (Del. Super. Ct. 1980); *see also Griffin Dewatering Corp. v. B.W. Knox Const. Corp.*, No. A. 98L-09-008, 2001 WL 541476, at *7 (Del. Super. Ct. May 14, 2001); *Gilbane Bldg. Co. v. Nemours Found.*, 606 F. Supp. 995, 1008 (D. Del. 1985); *cf. Stryker Demolition & Env't Servs., LLC v. Arcadis U.S., Inc.*, No. N20C-03-166, 2020 WL 6588493, at

*3 (Del. Super. Ct. Nov. 10, 2020) (applying *Chrysler* to unjust enrichment claim). Here, Hapag fails to plausibly allege that it is unable to recover from Dhunseri under the Hapag Bills of Lading. *See Gilbane*, 606 F. Supp. at 1008 (dismissing quantum meruit claim against third-party beneficiary where "there is no allegation that [plaintiff] will be unable to recover full compensation" from party to underlying contract); *cf. Stryker*, 2020 WL 6588493, at *3 (dismissing unjust enrichment claim because "third-party beneficiary status alone is an insufficient basis for pursuing relief"). The Court therefore recommends that Hapag's quantum meruit claim (Count III) be dismissed.

### 3.    Count IV – Account Stated

Hapag also asserts an account stated claim to recover the full amount due. (D.I. 18 ¶¶ 19 & 20). To sufficiently plead a claim for account stated, a plaintiff must allege: (1) an account existed between the parties, (2) the defendant stated or admitted to owing a specific sum on the account to the plaintiff and (3) the defendant made this admission after the original account or debt was created. *Sparebank 1 SR-Bank ASA v. Wilhelm Maass GMBH*, No. N19C-02-025, 2019 WL 6033950, at *6 (Del. Super. Ct. Nov. 5, 2019); *see also Outbox Sys., Inc. v. Trimble Inc.*, No. N21C-11-123, 2022 WL 3696773, at *7 (Del. Super. Ct. Aug. 24, 2022) (summarizing Delaware account stated case law). There "must be an agreement, subsequent to the creation of the debt, 'that the debtor owed a certain sum and there must be a valid underlying indebtedness upon which the account stated rests.'" *Sparebank*, 2019 WL 6033950, at *6 (quoting *Citibank (S. Dakota) N.A. v. Santiago*, No. CPU4-11005562, 2012 WL 592873, at *2 (Del. Com. Pl. Feb. 23, 2012)).

The Amended Complaint contains no factual allegations that Indorama "stated or admitted to owing a specific sum on the account" to Hapag or that any such admission was made "after the original account or debt was created." *See Sparebank*, 2019 WL 6033950, at *6-7. Indeed, all that Hapag alleges in the Amended Complaint is that Indorama "never denied that it was the proper

party to be billed." (D.I. 18 ¶ 5). That is insufficient. *See Sparebank*, 2019 WL 6033950, at *6 ("[T]he Complaint makes no allegations that [defendant] stated or admitted to owing a specific sum on the account. A claim for account stated cannot survive without this factual basis."); *see also Outbox*, 2022 WL 3696773, at *8 ("The Complaint contains no facts alleging [defendant] expressly stated or admitted to owing a specific sum on an account, or that [defendant] made such an admission after the original debt (*i.e.*, the invoices) was created."). The Court therefore recommends that Hapag's claim of account stated (Count IV) be dismissed.

### C.    Count V – Attorney Fees

Count V is a standalone claim for "attorney fees" and is based exclusively on "the terms and conditions in the subject Hapag-Lloyd bills of lading." (D.I. 18 ¶ 21). Because the Court concludes that the Amended Complaint fails to adequately plead that Indorama was a party to the Hapag Bills of Lading, the Court recommends that Count V be dismissed.

*        *        *

The Court has recommended that all claims in the Amended Complaint be dismissed. To the extent that Hapag wishes to amend its pleading to cure the deficiencies identified herein, Hapag may seek amendment using the proper procedure for doing so. *See LabMD, Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) ("A plaintiff properly requests amendment by asking the district court for leave to amend and submitting a draft of the amended complaint, so that the court can judge whether amendment would be futile." (citation omitted)).

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss (D.I. 20) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall limited to ten (10) pages and filed within fourteen (14) days after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: January 21, 2026

_____
UNITED STATES MAGISTRATE JUDGE